IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THAD THOMPSON, #A5013250, | ) | CIV. NO. 17-00319 DKW-RLP |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | IN PART AND DENYING MOTION |
| vs. | ) | FOR PRELIMINARY INJUNCTION |
| | ) | |
| KATHERINE TORRES, CPT. | ) | |
| PALEKA, and JOHN AND JANE | ) | |
| DOES 1-3, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT IN PART AND DENYING MOTION FOR PRELIMINARY INJUNCTION

Before the Court are Plaintiff Thad Thompson's Complaint and Motion for

Preliminary Injunction. ECF Nos. 1, 3. Thompson is incarcerated at the Halawa

Correctional Facility ("HCF") and is proceeding in forma pauperis. He names

HCF Counselor Katherine Torres, Captain Paleka, Residency Department

Supervisor John Doe, and High Kitchen and Law Library Supervisors Jane Does 1-

2, as Defendants in their individual and official capacities. Thompson claims

Defendants violated the First and Fourteenth Amendments when they allegedly

retaliated against him for filing suit and denied him due process during his housing

and custody classification review.

Thompson states a retaliation claim against Defendant Katherine Torres and service of the Complaint is appropriate for this claim only. The remaining claims and Defendants in the Complaint are DISMISSED pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), for Thompson's failure to state a claim, with leave granted to amend. Thompson's Motion for Preliminary Injunction is DENIED.

## I. SCREENING

Federal courts must screen all cases in which prisoners seek redress from a governmental entity, officer, or employee, or seek to proceed without prepayment of the civil filing fees. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Courts must identify cognizable claims and dismiss those claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at §§ 1915(e)(2) and 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, a plaintiff must demonstrate that each defendant

personally participated in the deprivation of his rights.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Pro se prisoners' pleadings must be liberally construed and given the benefit of any doubt.  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled."  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).  A plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief.  *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam) (citation omitted).  Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's defects.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## II. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation

omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.  Thompson's Claims[1]

Thompson has received three disciplinary infractions at HCF since November 22, 2016.[2]  A hearing was held regarding the latest two charges on May 2, 2017, after which Thompson was found guilty of both infractions.  He was

---

[1]For the purposes of this Order, Thompson's statement of facts is accepted as true.

[2]Thompson received the first infraction for "spitting on a Sgt."  Compl., ECF No. 1, PageID #2.  He received the second and third infractions on March 27 and 29, 2017, for fighting with other inmates.  *Id.*  The Court also takes judicial notice of the statement of facts in *Thompson v. Dep't of Public Safety*, No. 1:17-cv-00250 DKW (D. Haw.), in which Thompson alleges claims regarding these same disciplinary charges and confinement in special holding.

sanctioned to thirty days concurrent segregation for each charge of fighting. Thompson remained in the general population for two weeks, however, and was moved to the High Special Housing Unit ("HSHU") on May 15, 2017. Thompson calculated that he would be released to the general population on Sunday, June 4, 2017, thirty days from the date he was found guilty of the two latest charges.

Between May 24 and 30, 2017, Thompson filed two federal lawsuits in the District of Hawaii. *See Thompson v. Dep't of Public Safety*, *et al.*, No. 1:17-cv-00235 LEK (D. Haw. May 24, 2017) (alleging Defendants Torres and Paleka denied him access to the courts); *Thompson v. Dep't of Public Safety*, *et al.*, No. 1:17-cv-00250 DKW (D. Haw. May 30, 2017) (alleging HCF Discipline Committee Chair Nolan Uehara denied him due process during the disciplinary proceedings for his March 2017 infractions for fighting). Thompson also moved to reopen another suit, *Thompson v. City and Cty. of Honolulu, et al.*, No 1:17-cv-00002 JMS (D. Haw.) (dismissed Feb. 21, 2017; request to reopen May 29, 2017). Thompson also has a suit pending in this court, *Thompson v. Afamasaga*, No. 1:16-cv-00128 JMS (D. Haw. Mar. 21, 2016) (alleging HCF guard assaulted him).

On Friday, June 2, 2017, an inmate was released one day early from the HSHU. When Thompson questioned whether he too would be released early, the guards told him to file a grievance. On Monday, June 5, 2017, Defendant Torres

gave Thompson written notice that he was being held in HSHU administrative segregation pending a review of his custody status. Torres allegedly smiled, made "googly eyes," and laughed under her breath when she did so. Compl., ECF No. 1, PageID #6. Thompson submitted written requests for further explanation to Torres and Paleka on June 14, 15, 25, and 26, 2017, which he alleges were "answered with vague if any answers at all." *Id.*

Thompson complains that the HSHU has no programs, classes, workline jobs, TV, or microwave, and has "significantly less social activity," than general population housing. He further alleges that Jane Doe 1 kitchen supervisor has given him only "finger food" since June 23, 2017, and Jane Doe 2 law library supervisor has not scheduled him for "reasonable" law library visits. Compl., ECF No. 1, PageID #7.

Thompson states that he has not exhausted his administrative remedies regarding his claims because he seeks injunctive relief. In addition to such injunctive relief, Thompson seeks damages, and a transfer to the Federal Detention Center-Honolulu.

## B.      First Amendment: Retaliation

Thompson claims that Defendant Torres retaliated against him for filing suits when she denied him writing supplies, refused to submit his requests for law

library or kiosk time, and gave "vague and nonsensical responses" to his requests for information regarding his continued housing in the HSHU.  *Id.*  He claims Captain Paleka retaliated against him by failing to answer his requests for information regarding his continued housing in the HSHU.  Thompson claims Jane Doe 1 retaliated against him by serving him finger food and Jane Doe 2 did so by failing to schedule him for "reasonable" law library visits.

### 1.    *Legal Standard*

Retaliation against a prisoner for exercising his rights to speech or to petition the government may violate the First Amendment.  *See Rhodes v. Robinson*, 408 F.3d 559, 597 (9th Cir. 2005) (providing that prisoners have a First Amendment right to be free from retaliation for filing grievances and civil litigation); *see also Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  The elements of a First Amendment retaliation claim are: (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against the plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  A plaintiff can allege retaliatory intent (factor three) by alleging a chronological time line of events from which retaliation can be inferred.  *Id.*  If the

plaintiff's exercise of his constitutional rights was not chilled (factor four), he must allege the defendant's actions caused him to suffer more than minimal harm. *Rhodes*, 408 F.3d at 567-68, & n.11. Retaliation claims are reviewed with particular care as they are prone to abuse by prisoners. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Filing suit is clearly protected conduct. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). The Court will assume that being housed in the HSHU, denied "reasonable" law library visits, and forced to eat "finger food" are sufficiently onerous conditions to silence a person of ordinary firmness. Moreover, Thompson's chronology of events superficially supports an inference of retaliation. *See Watison*, 668 F.3d at 1114. Thompson nonetheless fails to state a viable First Amendment retaliation claim against Defendants Paleka and Jane Does 1-2.

### 2. *Jane Does 1-2*

Thompson alleges no causal connection between Jane Does 1-2 and his protected conduct. They are not named in any of Thompson's lawsuits, and he alleges no other causal connection between their alleged actions and his filing suit. *See Watison*, 668 F.3d at 1114. Thompson does not explain why his filing suit against *others* led Jane Does 1 and 2 to retaliate against him, nor does he even allege that they were aware of his lawsuits. His claims against them are completely

8

conclusory.  If every time an inmate filed suit he could thereafter allege retaliation claims against any prison official for every action he dislikes, the causal connection element of a retaliation claim would be meaningless.  Moreover, Thompson clearly alleges that Torres refused to submit his requests for law library visits.  This makes his allegations against the Jane Doe law library supervisor implausible.  *See Iqbal*, 556 U.S. at 681.  That is, if Torres refused to submit Thompson's law library requests, then the law librarian cannot be faulted for failing to schedule him.  Thompson fails to satisfy the causation element regarding his claims against Jane Does 1-2, and therefore, he fails to state a claim against them.  Claims against Jane Does 1-2 in Count I are DISMISSED.

### 3. *Captain Paleka*

Thompson fails to allege sufficient facts showing that Captain Paleka retaliated against him by failing to reply to Thompson's requests for information regarding his confinement in administrative segregation.  First, Thompson clearly states that Torres gave him written and oral notice explaining why he was being kept in administrative segregation: because prison officials were reevaluating his custody classification.  It is immaterial whether Captain Paleka responded personally, or whether Paleka failed to respond.  This claim is purely conclusory and unsupported by plausible facts.

Second, to the extent Thompson's retaliation claim against Paleka is construed as the decision to continue housing Thompson in administrative segregation, Thompson fails to allege that this decision "did not advance legitimate goals" of the prison. *Watison*, 668 F.3d at 1114-15 (quoting *Rizzo*, 778 F.3d at 532). Thompson also fails to allege facts showing that his protected conduct was "the 'substantial' or 'motivating' factor" underlying this decision. *Brodheim v. Cry*, 584 F.3d 1262,1271 (9th Cir. 2009) (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 114-15 (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984) (internal citation omitted).

Thompson admits that he received three misconduct charges within approximately four months, between November 2016 and March 2017. Two of these charges were for fighting with other inmates, and one was for insubordination ("spitting at a Sgt."). *See* Compl., ECF No. 1, PageID #2. In light of these facts, the most plausible inference here is that the decision to house Thompson in administrative housing while reevaluating his custody status was made for the maintenance of order in the prison and that this decision (whether

made by Paleka or another) was neither arbitrary nor capricious.  Thompson fails to state a retaliation claim against Captain Paleka and claims in Count I against Captain Paleka are DISMISSED.

### 4.  *Counselor Torres*

Accepting Thompson's allegations and chronology of events regarding Torres's conduct, and construing all facts in his favor, Thompson adequately alleges a First Amendment retaliation claim against Counselor Torres and that claim is permitted to proceed.

## C.  Due Process Under the Fourteenth Amendment

Thompson alleges Torres, Paleka, and John Doe Residency Supervisor violated his right to due process by failing to respond to his requests for a decision on his custody status.

The Due Process Clause of the Fourteenth Amendment protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted).  Although the level of the hardship must be determined in a case-by-case analysis, courts look to:

> (1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). Only if an inmate has alleged facts sufficient to show a protected liberty interest will the court consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860. Thus, to determine whether disciplinary sanctions create atypical and significant hardship, the court looks to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013); *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

First, Thompson has no liberty interest regarding a prison's reclassification and transfer decisions. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Nor does he have a liberty interest in freedom from transfer from general population to administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).

Second, Thompson fails to allege facts showing that his housing in administrative segregation subjected him to "atypical and significant hardship in relation to the ordinary incidents of prison life." *Ramirez,* 334 F.3d at 860; *Sandin*,

12

515 U.S. at 584.  In general, "administrative segregation in and of itself does not implicate a protected liberty interest."  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  For example, a relatively brief stay in disciplinary segregation does not, in itself, invoke a liberty interest.  *Sandin*, 515 U.S. at 486 (explaining that a thirty-day stay did not invoke a liberty interest); *see also Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (explaining that fifteen days of segregation did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life).  When Thompson completed his Complaint on July 5, 2017, he had spent fifty-one days in the HSHU.  Part of that time was pursuant to his thirty-day disciplinary sanction.  This was not a significant period in segregation, regardless of whether it was administrative or disciplinary.

Third, although an indefinite period in isolation or abnormally harsh conditions may cause an atypical and significant hardship, *see Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), the conditions about which Thompson complains, such as a lack of television, microwave, job, programs, classes or social interaction, do not meet that standard.

Fourth, although Thompson suggests that his continued confinement in the HSHU will prolong the date he will become eligible for parole consideration, he does not allege that it affects the actual duration of his sentence.  Moreover,

Thompson has no direct or state-created liberty interest in early release on parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992); *Rideout v. Haw. Paroling Auth.*, 2014 WL 1571286, at *3 (D. Haw. Apr. 17, 2014) (recognizing that Hawaii's parole regime creates no liberty interest in parole and collecting District of Hawaii cases). Having no right to parole, Thompson has no valid expectation or right to participate in programs that are required for parole consideration.

The Complaint contains no other "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Thompson's continued confinement in administrative segregation represents "a dramatic departure from the basic conditions of sentence," or caused Thompson "atypical" or "significant hardship." *Sandin*, 515 U.S. at 584-85. Thompson fails to state a cognizable due process claim and Count II is DISMISSED.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a).  Exhaustion in prisoner cases covered by

§ 1997e(a) is mandatory regardless of the type of relief sought.  *See Porter v.*

*Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739, 741

(2001) (holding exhaustion is required regardless of whether plaintiff seeks

injunctive relief or money damages); *accord Jones v. Bock*, 549 U.S. 199, 211

(2007).

Failure to exhaust is "an affirmative defense the defendant must plead and

prove."  *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d, 1162, 1166 (9th Cir.

2014).  "In the rare event that a failure to exhaust is clear from the face of the

complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747

F.3d at 1166.  Thompson is NOTIFIED that this action may be subject to dismissal

for his failure to exhaust.

## IV.  **MOTION FOR PRELIMINARY INJUNCTION**

Preliminary injunctive relief is appropriate when the movant demonstrates

that "he is likely to succeed on the merits [of the underlying action], that he is

likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest."

*Winter v. Nat. Resources Def. Council*, 555 U.S. 7, 20 (2008); *see also Stormans,*

*Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*).  Injunctive

relief "is an extraordinary remedy, never awarded as of right." *Winter*, 555 U.S. at 24.

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision on the merits of the case. *See* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). That is, to preserve the status quo pending a determination on the merits. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009). The standards governing the issuance of temporary restraining orders are "substantially identical" to those governing the issuance of preliminary injunctions. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brushy and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Speculative injury does not constitute irreparable harm. *See id.*; *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). A presently existing actual threat must be shown, although the injury need not be certain to occur. *Zenith Radio Corp. v.*

*Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969); *FDIC v. Garner*, 125 F.3d 1272, 1279-80 (9th Cir. 1997).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

In light of the Court's discussion and the dismissal of the Complaint, Thompson fails to show that (1) he is likely to succeed on the merits of his claims; (2) he will suffer irreparable harm in the absence of preliminary injunctive relief; (3) the equities tip in his favor; or (4) an injunction is in the public interest. Thompson's Motion for Preliminary Injunction, ECF No. 3, is DENIED.

## V.  LEAVE TO AMEND

The Complaint is DISMISSED with leave granted to amend.  Thompson may file an amended complaint on or before September 5, 2017 that cures the deficiencies noted above.  An amended complaint generally supersedes the previous complaint.  *See Lacey*, 693 F.3d at 907, n.1.  Thus, an amended complaint should stand on its own without incorporation or reference to a previous pleading. Defendants not named and claims dismissed without prejudice that are not realleged in an amended complaint may later be deemed voluntarily dismissed.  *Id.*

at 928 (stating claims dismissed with prejudice need not be repled in an amended complaint to preserve them for appeal, but claims that are "voluntarily dismissed" are considered "waived if not repled").

In the alternative, Thompson may notify the Court in writing on or before September 5, 2017, that he will stand on his retaliation claim against Defendant Torres and voluntarily dismiss the balance of his claims. In that event, the Court will direct the U.S. Marshal to serve the Complaint on Defendant Katherine Torres only, and she will be required to file an Answer or responsive motion.

## VI. <u>CONCLUSION</u>

(1) The Complaint is DISMISSED IN PART for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Specifically, Count I as alleged against Katherine Torres states a claim and may proceed. Thompson's claims in (1) Count I as alleged against Captain Paleka and Jane Does 1-2, and (2) Count II as alleged against Katherine Torres, Captain Paleka, and John Doe Residency Department Supervisor are DISMISSED with leave to amend.

(2) Thompson may file an amended complaint on or before September 5, 2017.

(3) In the alternative, Thompson may NOTIFY the Court in writing on or before September 5, 2017, that he will stand on his retaliation claim in Count I as

alleged against Katherine Torres only. If Thompson chooses this option, his

remaining claims against Defendants will be dismissed with prejudice and the

Court will order the U.S. Marshal to serve the Complaint at Thompson's direction

on Defendant Torres only.

(4)     Thompson's Motion for Preliminary Injunction is DENIED.

(5)     The Clerk is directed to mail Thompson a prisoner civil rights

complaint form so that he can comply with the directions in this Order if he

chooses to amend his pleadings. Thompson is NOTIFIED that failure to use the

court's complaint form for any amended pleading may result in the document

being stricken.

IT IS SO ORDERED.

DATED: August 2, 2017 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

*Thad Thompson vs. Katherine Torres, et al.*; Civil No. 17-00319 DKW-RLP **ORDER DISMISSING COMPLAINT IN PART AND DENYING MOTION FOR PRELIMINARY INJUNCTION**

*Thompson v. Torres*, 1:17-cv-00319 DKW-RLP; Scrn 2017 Thompson 17-319 dkw (dsm in part, dny PI)

19