IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THAD THOMPSON, #A5013250, | ) | CIV. NO. 17-00319 DKW-RLP |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING FIRST |
| | ) | AMENDED COMPLAINT |
| vs. | ) | PURSUANT TO 28 U.S.C. §§ 1915(e) |
| | ) | and 1915A(a) |
| KATHERINE TORRES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the Court is Plaintiff Thad Thompson's First Amended Complaint

("FAC").[1]  ECF No. 10.  Thompson alleges that Defendants Halawa Correctional

Facility ("HCF") Counselor Katherine Torres, Captain Paleka, Nurse Mike, Nolan

Uehara, Residency Department Supervisor John Doe ("John Doe"), and Law

Library Supervisor Jane Doe ("Jane Doe") violated his rights under the First and

Eighth Amendments regarding his placement in segregation in May 2017.  He

names Defendants in their individual and official capacities and seeks damages and

a transfer to the Federal Detention Center - Honolulu.

---

[1]Thompson is proceeding in forma pauperis.  ECF No. 8.

1

For the following reasons, the FAC is DISMISSED pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a) for failure to state a plausible claim for relief, with limited leave to amend, as described below.

## I. <u>BACKGROUND</u>[2]

Thompson filed the original Complaint and a motion for preliminary injunction on July 7, 2017. ECF Nos. 1 & 3. He claimed that Defendants Torres, Paleka, John Doe, Jane Doe, and Kitchen Supervisor Jane Doe 2 violated his rights under the First Amendment when they allegedly retaliated against him for filing grievances and lawsuits, and under the Fourteenth Amendment when they allegedly denied him due process during the segregation determination and custody classification review.

On August 2, 2017, the Court screened the Complaint and held that, liberally construed and on the facts then alleged, Thompson stated a retaliation claim against Torres, but failed to state any other plausible claim for relief against any other Defendant. *See* Order, ECF No. 9. The Court accordingly dismissed the Complaint in part, denied the motion for preliminary injunction, and granted Thompson leave to amend.

---

[2]For screening purposes, Thompson's allegations of material fact are accepted as true and construed in the light most favorable to him. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On August 23, 2017, Thompson filed the FAC. ECF No. 10. Thompson has abandoned his Fourteenth Amendment due process claims, as well as his claims against Kitchen Supervisor Jane Doe. At the same time, Thompson reasserts his First Amendment retaliation claims, adds new claims under the Eighth Amendment, and alleges all of these claims against all Defendants, including newly added Defendants, Nurse Mike and Nolan Uehara. Although Thompson states that he was charged with three disciplinary violations between November 2016 and March 2017, he confines his challenges asserted in the FAC to the last two.

On May 2, 2017, Uehara chaired Thompson's disciplinary proceeding regarding the two most recent charges. Uehara found Thompson guilty of both and sanctioned him to thirty-day, concurrent periods of segregation for each. Thompson alleges that Uehara denied his request to call witnesses at the hearing.

On May 15, 2017, Thompson was transferred to the High Special Housing Unit ("HSHU") to serve his sanctions. Thompson says that he began to have "access-to-courts" problems in another case immediately upon his transfer to the HSHU, when he was allegedly denied the right to store all of his legal papers in his cell and sufficient writing supplies.[3] *Id.*, PageID #60. Thompson wrote Paleka

_____

[3]Thompson is referring to *Thompson v. Afamasaga*, 1:16-cv-00128 JMS-KSC (D. Haw).

four times between May 15 and 18, 2017, to complain and inform Paleka that he

had a lawsuit pending and required all of his legal documents.  On May 23, 2017,

Thompson told Torres that he had filed grievances and a lawsuit against her for

failing to provide him with writing supplies.

On May 24, 2017, the court received and filed *Thompson v. Dep't of Public*

*Safety, et al.*, No. 1:17-cv-00235 LEK-KSC (D. Haw. 2017), in which Thompson

alleged Paleka, Torres, and " Marina Law Librarian," among others, denied him

access to the court by denying him adequate writing supplies, photocopies, and

access to legal papers, and failed to adequately respond to his complaints and

grievances.  *See id*.  Although Thompson acknowledges that Torres providing him

with writing supplies on or about June 2, 2017, manila envelopes continued to be

withheld.

On August 1, 2017, the district court dismissed Thompson's action with

prejudice for failure to state a plausible claim, after granting Thompson two

opportunities to amend his pleadings.  *Id.*, ECF No. 23.

On May 30, 2017, Thompson filed a separate suit against Uehara for

denying his request to call a witness at the May 2, 2017 disciplinary hearing.  *See*

*Thompson v. Dep't of Public Safety*, *et al.*, No. 1:17-cv-00250 DKW-KJM (D.

Haw. 2017).  After providing notice and leave to amend, on August 2, 2017, the

Court dismissed this action with prejudice as well for failure to state a plausible claim for relief.  *Id.*, ECF No. 14.

Between May 15 and June 6, 2017, Thompson says that although Torres admits to having given his law library requests to Jane Doe, Jane Doe denied having received them on "multiple occasions."  Jane Doe also claimed she was too busy to make photocopies of his legal documents.

On or about June 4, 2017, the day before Thompson expected to be released from disciplinary segregation,[4] Thompson inquired whether he would be released early, because another inmate had been released early.  The guard allegedly told Thompson to stop whining and to file a grievance if he was unhappy.

On June 5, 2017, Torres gave Thompson written notice that he would remain in administrative segregation pending a review of his custody status.  He says Torres smiled and made "googly eyes" at him.  FAC, ECF No. 10, PageID #62. Thompson was later told that his custody classification status was under review because he posed a "threat to security."  *Id.* at PageID #63.  Thompson says he submitted oral and written requests for further explanation to Torres, Paleka, and John Doe, but they either failed to respond or responded vaguely.

---

[4]It is unclear why Thompson's thirty-day sanction was expected to end after two weeks.

On June 6, 2017, Thompson was placed "on suicide watch." *Id.*, PageID #64. While there, he told Nurse Mike that HCF officials were mistreating and retaliating against him for filing lawsuits and grievances. He alleges Nurse Mike took personal offense at this statement. When Thompson returned to the segregation unit, he asked Nurse Mike to provide his "medical chopped diet" but received a "Finger Food diet" instead. *Id.* Thompson asked Nurse Mike to change this diet several times, but alleges Nurse Mike told him to file a grievance.

Thompson says that he complained about his confinement in administrative segregation to Paleka and Torres. He says that administrative segregation lacks "programs, classes, work-line jobs, t.v., [and] microwave," and has "significantly less social activity," than general population housing, which he suggests violates the Eighth Amendment. FAC, ECF No. 10, PageID #65.

Thompson broadly alleges Defendants' actions and inactions constitute retaliation and cruel and unusual punishment under the First and Eighth Amendments.

## II.  SCREENING

Federal courts must screen all cases in which prisoners seek redress from a governmental entity, officer, or employee, or seek to proceed without prepayment of the civil filing fees. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Courts must

identify cognizable claims and dismiss those claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at §§ 1915(e)(2) and 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Further, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Pro se prisoners' pleadings must be liberally construed and given the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S.

7

319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). A plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief. *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam) (citation omitted). Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's defects. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## III. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (explaining

that a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights).  A person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A.     Official Capacity Claims

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.").  Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Ex parte Young*, 209 U.S. 123 (1908).

To the extent Thompson seeks damages against Defendants in their official capacities, they are immune from suit under the Eleventh Amendment.[5]

**B.    Eighth Amendment**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978); *Spain v. Procunier*, 600 F.2d 189, 200 (9th Cir. 1979). "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail upon an Eighth Amendment claim against a prison official, an inmate must meet two requirements, "one objective and one subjective." *Lopez*, 203 F.3d at 1132. "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Id.* at 1133 (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1995)).

---

[5]To the extent Thompson seeks a transfer to the Federal Detention Center, the Court lacks jurisdiction to order such relief.

Nothing within the FAC suggests that any Defendant subjected Thompson to cruel and unusual punishment or acted with deliberate indifference to his health or safety. Being denied a T.V., microwave, rehabilitation programs, classes, jobs, and a chopped food diet (rather than a "finger food" diet) simply does not constitute a denial of the "minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Count II is DISMISSED against all Defendants for failure to state a claim under the Eighth Amendment. Thompson has had two chances to set forth the facts underlying his claims and neither pleading satisfies the stringent standards required to allege an Eighth Amendment violation. Amendment of this claim is futile, and this dismissal is with prejudice.

## C. Res Judicata – Claim Preclusion

The related doctrines of res judicata and collateral estoppel limit the ability of litigants to relitigate matters already decided. Under the doctrine of res judicata (also known as claim preclusion), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel [also known as issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citation omitted) (finding federal claim is collaterally estopped by prior state court litigation).

Claim preclusion bars litigation of claims that were or could have been raised in a prior action. *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (quotation marks omitted). Claim preclusion "requires three things: (1) identity of claims; (2) a final judgment on the merits; and (3) the same parties, or privity between parties." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2010)). All three requirements for res judicata are satisfied as to Thompson's claims against Uehara, Paleka, Torres, Jane Doe, and John Doe.

### 1. *Identity of Claims*

Courts apply four criteria to determine whether there is an identity of claims: "'(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.'" *Harris*, 682 F.3d at 1132 (quoting *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150

(9th Cir. 2011)). "The fourth criterion–the same transactional nucleus of facts–is the most important." *Liquidators of European Fed. Credit Bank*, 630 F.3d at 1151.

"Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether they could conveniently be tried together." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (citing *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010)) (internal quotation marks omitted). In most cases, "the inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." *Liquidators of European Fed. Credit Bank*, 630 F.3d at 1151.

Thompson's allegations in the FAC mirror his allegations in *Thompson v. Dep't of Public Safety, et al.*, No. 1:17-cv-00235 LEK and *Thompson v. Dep't of Public Safety*, *et al.*, No. 1:17-cv-00250 DKW. In No. 1:17-cv-00235 LEK Thompson alleged that Torres failed to provide him with sufficient writing supplies, Paleka (and others) failed to adequately respond to his grievances and complaints, and Marina Law Librarian refused to make photocopies of his documents. He says this hindered his ability to litigate his claims in 1:16-cv-00128 JMS, thereby denying him access to the courts. Thompson alleges the same claims

here, supported by the same allegations of facts, against Torres, Paleka, John and Jane Doe.

In No. 1:17-cv-00250 DKW, Thompson alleged that Uehara denied his request to call a witness to the May 2, 2017 disciplinary hearing, thereby denying him due process. He alleges identical allegations against Uehara here.

Although Thompson now offers additional legal theories regarding *how* Paleka, Torres, John and Jane Doe, and Uehara allegedly violated his rights–that is, he now claims they violated the First Amendment by retaliating against him (rather than by denying him access to the court), and that their actions violated the Eighth Amendment by subjecting him to cruel and unusual punishment–this does not alter the conclusion that there is an identity of claims between Nos. 1:17-cv-00235 LEK and 1:17-cv-00250 DKW and this action. A plaintiff cannot avoid the bar of claim preclusion merely by pleading a new legal theory. *See McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986); *see, e.g., Stewart v. U.S. Bancorp*, 297 F.3d 953, 957-58 (9th Cir. 2002) (holding ERISA claim was barred when prior action was dismissed because plaintiff's state law claim was preempted by ERISA and he failed to amend to state a valid ERISA claim); *Smith v. City of Chicago*, 820 F.2d 916, 920 (7th Cir. 1987) (applying claim preclusion when single core of operative facts formed basis of both lawsuits and plaintiff failed to raise § 1983 claim until

years after it occurred and not until adverse judgment was rendered on employment discrimination claim); *Ford v. King*, 2017 WL 3537196 (E.D. Cal. Aug. 17, 2017) (holding prisoner action was barred by res judicata relating to two earlier actions dismissed for failure to state a claim).

### 2.     Final Judgment on the Merits

The second requirement for res judicata is a final judgment on the merits. Civil Nos. 1:17-cv-00235 LEK and 1:17-cv-00250 DKW were each dismissed for Thompson's failure to state a plausible claim on which relief may be granted against any defendant. A dismissal for failure to state a claim for which relief may be granted is a decision on the merits. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). Thompson did not appeal from either dismissal, and the respective August 1 and 2, 2017 judgments in Nos. 1:17-cv-00235 LEK and 1:17-cv-00250 DKW are final.

### 3.     Privity of Parties

The third requirement, identity or privity of parties, requires a determination whether privity exists between Thompson, Paleka, Torres, Uehara, and John and Jane Does in the two earlier actions and the instant suit. There is privity between parties when a party to later litigation is "so identified in interest with a party to

former litigation that he represents precisely the same right in respect to the subject matter involved." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052-53 (9th Cir. 2005) (citation omitted). This concept was traditionally limited to certain "legal relationships in which two parties have identical or transferred rights with respect to a particular legal interest," such as co-owners of property, decedents and heirs, or joint obligees. *Id.* at 1053. It includes almost any relationship in which "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest. . . . [P]rivity is a flexible concept dependent on the particular relationship between the parties in each individual set of cases[.]" *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1081-82 (9th Cir. 2003) (citations and quotations omitted).

There is clearly an identity of parties between the three actions at issue here. Thompson is the plaintiff in each. Paleka and Torres were explicitly named as defendants in No. 1:17-cv-00235 LEK, Uehara was named in No. 1:17-cv-00250 DKW, and Thompson's claims against them are identical. Although Thompson identified "Marina Law Librarian" in No. 1:17-cv-00235 LEK as the law library employee who allegedly denied him photocopies, and identifies "Jane Doe Law Library Supervisor" here, this difference is immaterial. Their duties are

identical–responsibility for providing inmates with photocopies– and they are clearly in privity with each other (if not the same person).

Additionally, although Thompson now also names John Doe Residency Department Supervisor for allegedly failing to respond to his grievances in addition to Paleka, there is an obvious commonality of interest between these two Defendants. Whether Thompson's grievances or informal complaints regarding his housing in HSHU were directed at Paleka or another unidentified party, they relate to the same legal rights that Thompson alleges he was denied–the right to a response to his inquiries regarding his housing placement. That is, there is a substantial identity between these two concerning the particular prison official who has responsibility for responding to an inmate's complaints about his housing. There is a privity of parties.

### 4.    *Analysis*

Thompson's allegations here and in the two earlier actions set forth above are nearly identical. The only difference is that Thompson alleges different legal claims (based on the same set of facts), identified the law librarian (or supervisor) slightly differently in No. 1:17-cv-00235 LEK, and failed to name the residency supervisor as a defendant in No. 1:17-cv-00235 LEK for an identical claim that he alleges here. These slight differences do not negate the otherwise complete

duplicity of his factual allegations in all three of these actions. Thompson's claims

against Torres, Paleka, Uehara, Jane Doe Law Librarian Supervisor, and John Doe

Residency Department Supervisor are barred by the principles of claim

preclusion/res judicata and are DISMISSED. Because Thompson has had

numerous opportunities to amend these claims (in three separate actions), this

dismissal is WITH PREJUDICE.

**D.      Remaining Claim:  Retaliation as Alleged Against Nurse Mike**

Thompson alleges two new claims against a new Defendant, Nurse Mike,

that are not barred by res judicata.  Thompson claims that Nurse Mike "purposely

placed [him] on a Unsanitary Finger food diet and then after multiple fake attempts

to take [Thompson] off said diet he snidely told Plaintiff to file a Grievance while

laughing under his breath all due to Plaintiff's civil actions and Grievances."  FAC,

ECF No. 10, PageID #66.  Thompson alleges he was placed on this finger food diet

on or about June 6, 2017 when he was placed on suicide watch and was kept on the

diet for an undisclosed amount of time after he returned to the HSHU.

The elements of a First Amendment retaliation claim are: "(1) An assertion

that a state actor took some adverse action against an inmate (2) because of (3) that

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

of his First Amendment rights, and (5) the action did not reasonably advance a

legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Filing civil lawsuits and grievances is considered protected conduct. *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011).

A plaintiff suing for retaliation under § 1983 must allege that "he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). The plaintiff need not show actual inhibited or suppressed speech, but only that there was a chilling effect upon his speech. *Rhodes*, 408 F.3d at 569. If the plaintiff's exercise of his constitutional rights was not chilled, he must allege the defendant's actions caused him to suffer more than minimal harm. *Rhodes*, 408 F.3d at 567-68, & n.11. It is the plaintiff's burden to plead and prove the absence of any legitimate correctional goals for the alleged conduct. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). A plaintiff can allege retaliatory intent by alleging a chronological time line of events from which retaliation can be inferred.

First, Thompson was placed on a finger food diet without access to utensils after he went on suicide watch. He does not state how long he remained on this diet. This decision obviously was intended to prevent him from obtaining implements with which to harm himself and was clearly taken to "advance legitimate goals" of the prison – preventing harm to a suicidal inmate. *Watison*, 668 F.3d at 1115. Thompson's statement of facts fails to allege the absence of any correctional goals for his placement and retention on the finger food diet.

Second, the causal connection between Nurse Mike's alleged failure to change Thompson's finger food diet and Thompson's filing grievances or lawsuits is tenuous. *See Watison*, 668 F.3d at 1114. Thompson told Nurse Mike that he felt mistreated by HCF officials when he went on suicide watch and had filed grievances and lawsuits against these officials. He does not explain why this would lead Nurse Mike (against whom he had not complained) to retaliate against him. Nor does Thompson allege that he grieved any medical decisions or medical personnel. Thompson did not name Nurse Mike or other medical personnel in his lawsuits. Thompson simply concludes that Nurse Mike continued Thompson's finger food diet to retaliate against him for filing grievances and lawsuits against others. These bare facts are insufficient to show a causal connection between Thompson's protected conduct and Nurse Mike's alleged adverse action. *Id.*

Third, Thompson does not allege that his First Amendment rights were chilled by Nurse Mike's alleged failure to rescind his finger food diet or that he suffered even minimal, actual harm from this decision. To the contrary, Thompson continued filing grievances and requests to Paleka, Torres, and John Doe, and a review of Civil Nos. 1:16-cv-00128 JMS, 1:17-cv-00235 LEK, and 1:17-cv-00250 DKW shows that Thompson continued filing numerous documents in each case after he was given the diet.

Fourth, Thompson alleges no facts showing that his protected conduct – filing grievances and lawsuits – was "the 'substantial' or 'motivating' factor" underlying Nurse Mike's (or the HCF medical department's) decision to keep him on a finger food diet. *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 114-15 (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984) (internal citation omitted). Nurse Mike's actions do not appear arbitrary, capricious, or unnecessary in light of Thompson's admitted suicidal ideation.

Finally, Thompson's claims against Nurse Mike are conclusory, "naked assertions," and represent the classic "formulaic recitation of the elements of a cause of action" that fails to state a plausible claim. *Twombly*, 550 U.S. at 555-57. Even viewing Thompson's claims against Nurse Mike in the light most favorable to Thompson, his bare assertions are insufficient to state a retaliation claim. *See Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555.

Thompson fails to state a plausible, non-conclusory retaliation claim against Nurse Mike, and this claim is DISMISSED with leave to amend.

## IV. <u>LEAVE TO AMEND</u>

The FAC is DISMISSED with leave granted to amend Thompson's retaliation claim against Nurse Mike only. Thompson may file an amended complaint on or before November 4, 2017 that cures the deficiencies in that claim, if possible. An amended complaint generally supersedes the previous complaint. *See Lacey*, 693 F.3d at 907, n.1. Thus, an amended complaint should stand on its own without incorporation or reference to a previous pleading. Defendants not named and claims dismissed without prejudice that are not realleged in an amended complaint may later be deemed voluntarily dismissed. *Id.* at 928 (stating claims dismissed with prejudice need not be repled in an amended complaint to preserve

them for appeal, but claims that are "voluntarily dismissed" are considered
"waived if not repled").

## V.  <u>28 U.S.C. § 1915(g)</u>

If Thompson fails to file an amended complaint, or is unable to cure the
deficiencies in his claim against Nurse Mike, this dismissal shall count as a "strike"
under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes
provision, a prisoner may not bring a civil action or appeal a civil judgment in
forma pauperis under 28 U.S.C. § 1915 –

> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the
> United States that was dismissed on the grounds that it is frivolous,
> malicious, or fails to state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of serious physical
> injury.

28 U.S.C. § 1915(g).

## VI.  <u>CONCLUSION</u>

(1)     The Complaint is DISMISSED IN PART for failure to state a claim
pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a).

(2)     Thompson's claims as alleged under the Eighth Amendment, and
ALL claims as alleged against Defendants Katherine Torres, Captain Paleka, Nolan
Uehara, Residency Department Supervisor John Doe, and Law Library Supervisor
Jane Doe regarding Thompson's May 2017 disciplinary proceedings, housing

decisions, and access to legal paper work or photocopies, are DISMISSED WITH PREJUDICE.

(3)     Thompson's retaliation claim against Nurse Mike is DISMISSED with leave granted to amend on or before November 4, 2017.  Failure to cure the deficiencies in this claim will result in dismissal of this action with prejudice and Thompson shall incur a strike pursuant to 28 U.S.C. § 1915(g).

(4)   The Clerk is directed to mail Thompson a prisoner civil rights complaint form so that he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED: October 4, 2017 at Honolulu, Hawai'i.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Thad Thompson vs. Katherine Torres, et al.*; Civil No. 17-00319 DKW-RLP; **ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART PURSUANT TO 28 U.S.C. §§ 1915(e) and 1915A(a)**

*Thompson v. Torres*, 1:17-cv-00319 DKW-RLP; Scrn 2017 Thompson 17-319 dkw (dsm FAC in part lv amd)

24