IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| THAD THOMPSON, #A5013250, | ) | CIV. NO. 17-00319 DKW-RLP |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART |
| vs. | ) ) | AND DIRECTING SERVICE |
| NURSE MIKE, | ) ) |  |
| Defendant. | ) ) |  |

Before the Court is Plaintiff Thad Thompson's Second Amended Complaint ("SAC"). ECF No. 18. Thompson is incarcerated at the Halawa Correctional Facility ("HCF") and is proceeding in forma pauperis. Thompson alleges that Defendant Nurse Mike violated his rights under the First and Eighth Amendments by serving him a "finger food" diet in the HCF High Security Unit ("HSU") when Thompson had requested a "chopped food" diet.

For the following reasons, Thompson's Eighth Amendment claim is DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b) because it fails to state a plausible claim for relief and amendment would be futile. Thompson, however, states a claim for retaliation under the First Amendment. This claim shall therefore be permitted to proceed, and the SAC shall be served on

1

Nurse Mike by the United States Marshals Service in accordance with the Court's instructions below.

## I. BACKGROUND[1]

Thompson's original July 7, 2017 Complaint (ECF No. 1) claimed that HCF employees Torres, Paleka, John Doe, Jane Doe, and Kitchen Supervisor Jane Doe 2 violated his rights under the (1) First Amendment when they allegedly retaliated against him for filing grievances and lawsuits; and (2) Fourteenth Amendment when they allegedly denied him due process during a segregation determination and custody classification review.

On August 2, 2017, the Court screened the Complaint, held that Thompson stated a retaliation claim against Torres only, and dismissed all remaining claims for failure to state a claim with leave granted to amend. *See* Order, ECF No. 9.

Thompson's August 23, 2017 First Amended Complaint ("FAC")(ECF No. 10) renamed Defendants Torres, Paleka, Uehara, and John and Jane Does and added Nurse Mike. He reasserted his retaliation claims, added Eighth Amendment claims, and abandoned his due process claims.

---

[1]Thompson's factual allegations are accepted as true and construed in the light most favorable to him. *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

On October 4, 2017, the Court screened and dismissed the FAC for failure to state a claim, with leave granted to amend Thompson's retaliation claim against Nurse Mike only, on or before November 4, 2017.[2] *See* Order, ECF No. 11.

On October 10, 2017, apparently after receiving the October 4, 2017 Order, Thompson signed an application to proceed in forma pauperis on appeal and mailed it to the Ninth Circuit Court of Appeals. ECF Nos. 12, 12-1. The Ninth Circuit received the application on October 23, 2017, and forwarded it to the District of Hawaii to process. *See* ECF Nos. 12-2, 14. This Court denied Thompson's request to proceed in forma pauperis on appeal because he had accrued three strikes pursuant to 28 U.S.C. § 1915(g), and further noted that this action would remain open until the time to file the amended pleading had passed. *See* Order, ECF No. 13.

On October 23, 2017, Thompson signed the SAC. He mailed it on November 7, and the Court filed it on November 13, 2017. ECF No. 18. Thompson sets forth two causes of action. In Count I, Thompson states that while on suicide watch for approximately seven days, he told Nurse Mike that HCF staff were retaliating against him for filing grievances and lawsuits. *Id.*, PageID #150-

---

[2]The Court dismissed Thompson's Eighth Amendment claims as alleged against all Defendants with prejudice. *See* Order, ECF No. 11, PageID #86. The Court dismissed Thompson's other claims against Torres, Paleka, Uehara, Jane and John Doe with prejudice as barred by the doctrine of res judicata. *See id.,* PageID #86-93.

51. Also while on suicide watch, Thompson was served a "finger food" diet which required no utensils. *Id.*, PageID #150. About three to four days after Thompson was released from suicide watch to solitary confinement in the HSU, he asked Nurse Mike to "get [his] chopped diet started again." *Id.*, PageID #151. Instead, Thompson continued to receive a finger food diet, which he claims is "unsanitary for regular housing." *Id.* Thompson says that he developed a rash on his arm, "busted knuckles," and a sore elbow due to the finger food diet. *Id.* When Thompson complained to Nurse Mike three times, he alleges that Nurse Mike "snidely" told him to file a grievance. *Id.* Thompson concludes that Nurse Mike did this in retaliation for his having filed grievances and lawsuits against others at HCF, in violation of the First Amendment. In Count II, Thompson alleges Nurse Mike's actions also violated the Eighth Amendment. He seeks declaratory relief and damages.

## II. SCREENING

Federal courts must screen all cases in which prisoners seek redress from a governmental entity, officer, or employee, or seek to proceed without prepayment of the civil filing fees. *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Courts must identify cognizable claims and dismiss those claims that are frivolous, malicious,

4

fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at §§ 1915(e)(2) and 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Further, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Pro se prisoners' pleadings must be liberally construed and given the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not

supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). A plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief. *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (per curiam) (citation omitted). Leave to amend should be granted if it appears possible that the plaintiff can correct the complaint's defects. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### III. DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (explaining that a plaintiff must demonstrate that each defendant personally participated in the

deprivation of his rights). A person deprives another of a constitutional right "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

## A. Official Capacity Claims

Thompson names Nurse Mike in his individual and official capacities. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Ex parte Young*, 209 U.S. 123 (1908).

Thompson does not allege an ongoing violation of federal law, and his claims for declaratory relief are subsumed by his damages claims. *See Rhodes v.*

7

*Robinson*, 408 F.3d 559, 566 n.8 (9th Cir. 2005) (dismissing claim for declaratory relief because plaintiff's "separate request for declaratory relief is subsumed by his damages action"). Thompson's official capacity claims against Nurse Mike are therefore DISMISSED with prejudice.

**B.      Eighth Amendment: Count II**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted); *see also Hutto v. Finney*, 437 U.S. 678, 685 (1978). "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment claim against a prison official, an inmate must meet two requirements, "one objective and one subjective." *Lopez*, 203 F.3d at 1132. "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Id.* at 1133 (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1995)).

Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's "serious medical needs." *Estelle*, 429 U.S. at 104. A medical need is serious if the failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F. 3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Here, receiving a finger food diet, rather than a chopped diet, does not constitute a denial of the "minimal civilized measure of life's necessities." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *cf. Hutto*, 437 U.S. at 685 (stating "a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months.") . Although he alleges that a finger food diet is generally unsanitary when served in regular housing, Thompson is not in regular housing – he is in solitary confinement. More important, he does not allege that the finger food he received was moldy, spoiled, inedible, or inadequate to sustain his nutritional needs. Nor does Thompson allege how long he remained on this regimen.

Further, while Thompson identified the chopped diet as a *medical* diet in the FAC, *see* ECF No. 10, PageID #64, he does not do so in the SAC. Even if Thompson has a recognized medical need for a chopped diet, however, he does not allege that the finger food diet failed to satisfy that need. Thompson apparently

9

tolerated finger food for seven days while on suicide watch without any alleged harm, yet fails to explain why the same diet caused him harm in the HSU. He does not claim that he is allergic to the finger food or set forth any facts connecting his rash to the finger food diet.³ Even accepting that Thompson developed a rash after he ate the finger food diet, and that the finger food caused the rash, Thompson fails to allege facts that show Nurse Mike knew that he would develop a rash or other adverse effect from the finger food, and ordered it anyway. Thompson does not say that he told Nurse Mike that he developed a rash that he believed was due to the finger food, and that Nurse Mike refused to change the diet. Thompson also fails to explain how a finger food diet caused him "busted knuckles" and a sore elbow – these allegations are simply implausible.

Thompson fails to set forth facts showing that Nurse Mike purposely ordered a finger food diet, rather than a chopped diet, despite knowledge that it would cause Thompson "'significant injury or the unnecessary and wanton infliction of pain.'" *Peralta*, 744 F.3d at 1081-82. That is, he fails to show that Nurse Mike acted with deliberate indifference to his health. Count II is DISMISSED for failure

---

³Thompson has recently alleged that he developed a rash (1) because the HCF shower was dirty, *see Thompson v. Paleka*, No. 1:17-cv-00531-SOM-KJM (D. Haw. Oct. 20, 2017); and (2) because he was denied a top sheet on his bunk for two days, *see Thompson v. Borges*, No. 1:17-cv-00561 LEK-KJM (D. Haw. Nov. 13, 2017). These allegations cast doubt on Thompson's new claim that the finger food diet was the cause of his rash.

to state a claim. Because Thompson has had several chances to allege facts supporting this claim and has been unable to do so, allowing further amendment would be futile, and this dismissal is with prejudice.

**C.     Retaliation:  Count I**

The elements of a First Amendment retaliation claim are: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

*1.     Protected Conduct*

Filing civil lawsuits and grievances against prison officials is considered protected conduct. *Watison*, 668 F.3d at 1114; *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). Thompson alleges that Nurse Mike retaliated against him because he had filed grievances and civil litigation against others at the prison.

*2.     Adverse Action*

An "adverse action need not be an independent constitutional violation." *Watison*, 668 F.3d at 1114. An otherwise permitted action can be the basis for a

11

retaliation claim if it is performed with a retaliatory motive and lacks a legitimate correctional goal. *See id.* at 1115. Construing Thompson's retaliation claim in the light most favorable to him, he sufficiently alleges that Nurse Mike took an adverse action against him.

### 3. *Causal Connection*

The plaintiff must allege facts that show a causal connection between the adverse action and the plaintiff's protected conduct. *Id.* That is, "a plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). A plaintiff must provide direct or circumstantial evidence of a defendant's relatiatory motive; mere speculation is insufficient. *See McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882-83 (9th Cir. 2011); *accord*, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). Because plaintiffs can rarely produce direct evidence of a defendant's retaliatory intent, they may plead circumstantial evidence that permits the inference of retaliation, such as the chronology of events. *See Watison*, 668 F.2d at 1114; *see also Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the

protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882 (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).

Although Thompson alleges few facts showing that his filing grievances and lawsuits against others was "the 'substantial' or 'motivating' factor" underlying Nurse Mike's decision to order a finger food, rather than a chopped, diet, he alleges enough for the Court to infer this. *Brodheim*, 584 F.3d at 1271 (quoting *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Thompson alleges that Nurse Mike ordered finger food rather than a chopped diet several days after Thompson told him he had filed grievances and civil litigation against others and that Nurse Mike "snidely" told him to file a grievance when Thompson requested a dietary change. Although this causal connection is tenuous, construing these facts in the light most favorable to Thompson, they are sufficient to infer Nurse Mike's retaliatory motive.

### 4. *Chilling Effect*

At the pleading stage, a plaintiff need not "demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim." *Rhodes*, 408 F.3d at 568 (emphasis omitted).

He only has to "show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). Thompson alleges sufficient facts to support the inference that Nurse Mike's conduct could chill an inmate of reasonable firmness from pursuing grievances or litigation.

### 5. *Legitimate Penological Goals*

Finally, a plaintiff must allege that "the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994). It is the plaintiff's burden to plead and prove the absence of any legitimate correctional goals for the alleged conduct. *Pratt*, 65 F.3d at 806. "A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were 'unnecessary to the maintenance of order in the institution.'" *Watison*, 668 F.3d at 114-15 (quoting *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984) (internal citation omitted). It is impossible to tell at this stage whether Nurse Mike's actions were arbitrary, capricious, or unnecessary, but this Court finds that this is a decision better left to the trier of fact.

Thompson's retaliation claim against Nurse Mike shall proceed and be served.

## IV. SERVICE ORDER

IT IS HEREBY ORDERED:

(1) The Clerk of Court shall send the United States Marshals Service a copy of the present Order, the endorsed Second Amended Complaint, a completed Summons for Defendant Nurse Mike, a completed USM-285 form, a completed Notice of Lawsuit and Request for Waiver of Service for Summons form (AO 398), and two completed Waiver of Service of Summons forms (AO 399) for Nurse Mike.

    a. Because Nurse Mike is alleged to be a Hawaii Department of Public Safety ("DPS") employee, the Clerk of Court shall complete the service document for Nurse Mike and address the documents to Shelley Nobriga, DPS Litigation Coordinator, 919 Ala Moana Blvd., 4th Floor Honolulu, HI 96814, who has agreed to accept one Service Order, one copy of the pertinent complaint, and waiver of service forms for all DPS Defendants.

(2) Upon receipt of these documents from the Clerk, the United States Marshals Service shall mail to Ms. Nobriga a copy of this Order, the Second

Amended Complaint, the Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and the Waiver of Service of Summons forms (AO 399).

(3) The United States Marshals Service shall retain the Summons, a copy of this Order, and a copy of the Second Amended Complaint. If Nurse Mike waives service of the Summons, he shall return the Waiver of Service form to the United States Marshals Service within a reasonable time (not less than thirty days from the date requests for waiver of service are mailed). If the Waiver of Service of Summons form and request for waiver of service are returned as undeliverable, the United States Marshals Service shall immediately file them with the court.

(4) If Nurse Mike fails to return the Waiver of Service of Summons form within a reasonable time from the date of mailing, the United States Marshals Service shall:

    a. Personally serve Defendant with this Order, the Second Amended Complaint, and Summons pursuant to Fed. R. Civ. P. 4 and 28 U.S.C. § 566(c) and shall obtain all necessary assistance from the Department of Public Safety for service on DPS employees, to execute this Order.

    b. Within ten days after personal service, the United States Marshals Service shall file the return of service for Defendant, along with evidence of any attempts to secure a waiver of service of summons and of the costs

incurred in effecting personal service. These costs shall be set forth on the USM-285 form and shall include costs incurred by the United States Marshals Service for photocopying additional copies of this Order, the Second Amended Complaint, and Summons, and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served Defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(5) Defendant Nurse Mike shall file a response to the Second Amended Complaint (as limited by this Order) within the time provided in Fed. R. Civ. P. 12. Failure to do so may result in the entry of default.

(6) Thompson shall inform the court of any change in his address by filing a "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief. Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(7) After the Second Amended Complaint is served and Nurse Mike has filed a response, all documents Thompson files thereafter will be deemed served on Defendant or his attorney(s) who participate in the court's Case Management/Electronic Case Filing (CM/ECF) system.

## V. CONCLUSION

(1) The Second Amended Complaint is DISMISSED IN PART. Thompson's Eighth Amendment claim and his claim against Nurse Mike in his official capacity are DISMISSED with prejudice. Thompson's retaliation claim against Nurse Mike in his individual capacity shall proceed and be served.

(2) The Clerk is DIRECTED to send the documents detailed above to the United States Marshals Service who shall effect service on Nurse Mike.

(3) After service is effected, Nurse Mike SHALL file a response to the Second Amended Complaint.

IT IS SO ORDERED.

DATED: November 21, 2017 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Thad Thompson vs. Katherine Torres, et al.*; Civil No. 17-00319 DKW-RLP; **ORDER DISMISSING SECOND AMENDED COMPLAINT IN PART AND DIRECTING SERVICE**

*Thompson v. Torres*, 1:17-cv-00319 DKW-RLP; Scrn 2017 Thompson 17-319 dkw (dsm SAC in pt dir svc)