IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THAD THOMPSON, #A5013250, | ) | CIV. NO. 17-00319 DKW-RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANT'S MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| KATHERINE TORRES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the court is Defendant Michael Bala's Motion for Summary Judgment. Mot., ECF No. 50. Bala asserts that Plaintiff Thad Thompson failed to exhaust available prison administrative remedies regarding the retaliation claim that Thompson alleged against him prior to filing this suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See id.,* Mem. in Support, ECF No. 50-1. Thompson has filed his Opposition, ECF No. 55, and Bala has filed a Reply, ECF No. 61, and an amended Reply, ECF No. 62.

The court finds that Thompson failed to exhaust his available administrative remedies prior to filing this action. There is no basis in the record to excuse this failure, and Bala's Motion for Summary Judgment is GRANTED. The Clerk is DIRECTED to terminate this action without prejudice and close the file.

## I. BACKGROUND

Thompson is incarcerated at the Halawa Correctional Facility ("HCF") in the custody of the Hawaii Department of Public Safety ("DPS"). He commenced this suit on July 3, 2017,[1] claiming that HCF employees and officials Katherine Torres, Captain Paleka, Nolan Uehara, Residency Department Supervisor John Doe, High Kitchen Supervisor Jane Doe, and Law Library Supervisor Jane Doe denied him due process and retaliated against him for filing grievances and lawsuits. *See* Compl., ECF No. 1. Relevant to the present Motion, Thompson alleged that Jane Doe High Kitchen Supervisor provided him a finger food diet rather than a chopped food diet in retaliation for his filing civil suits and grievances. Thompson said he asked several nurses to correct his diet but he did not name Bala as one of these nurses.

On August 2, 2017, the court found that Thompson stated a colorable retaliation claim against Torres and dismissed the remaining claims against all other Defendants with leave granted to amend. *See* Order, ECF No. 9.

On August 23, 2017, Thompson filed the First Amended Complaint ("FAC"). ECF No. 10. He reasserted his retaliation claims, added Eighth

---

[1]Thompson dated the Complaint as signed on July 5, 2017. It was mailed from HCF to the court on July 3, 2017, however, which the court accepts as filing date. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (explaining prison mailbox rule).

Amendment claims, and abandoned his due process claims. Thompson renamed Defendants Torres, Paleka, Uehara, John Doe Residency Supervisor, and Jane Doe Law Library Supervisor. He also identified "Nurse Mike,"[2] as the nurse who served him finger food rather than a chopped food diet, allegedly in retaliation for Thompson filing law suits and grievances against other HCF staff. *See id.*, PageID #64.

On October 4, 2017, the court dismissed Thompson's Eighth Amendment claims and all claims alleged against Torres, Paleka, Uehara, Residency Supervisor John Doe, and Law Library Supervisor Jane Doe with prejudice. *See* Order, ECF No. 11. The court dismissed Thompson's retaliation claim against Bala with leave to amend.

On November 13, 2017, Thompson filed a Second Amended Complaint ("SAC"), which is the operative complaint, in which Thompson alleged that Bala refused to change his finger food diet to a chopped food diet in retaliation for Thompson's filing grievances and lawsuits against others. ECF No. 18. He alleged Bala's actions violated the First and Eighth Amendments.

---

[2] "Nurse Mike" refers to Bala.

On November 21, 2017, the court dismissed Thompson's Eighth Amendment claim and directed the SAC served on Bala as to the retaliation claim only. Order, ECF No. 19.

On May 18, 2018, Bala filed the present Motion for Summary Judgment, seeking dismissal for Thompson's failure to exhaust available administrative remedies before filing suit. *See* Mot., ECF No. 50; Concise Statement of Facts ("CSF"), ECF No. 51.

## II. **LEGAL STANDARD**

Summary judgment is proper when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir.

1996). At summary judgment, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cty.*, 693 F.3d 1122, 1132 (9th Cir. 2012).

On summary judgment, a moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). That is, the moving party must demonstrate through authenticated evidence that the record forecloses the possibility of a reasonable trier-of-fact finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court must view all evidence and inferences in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

If the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). This requires the nonmoving party to "show more than the mere

existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat a summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. <u>DISCUSSION</u>

Thompson says he was on suicide watch between June 9 and 22, 2017 because he was being retaliated against for filing lawsuits and grievances at HCF. SAC, ECF No. 18, PageID #150. Thompson says that Bala put him "on a finger

6

food diet in retaliation after I told him about why I was on suicide watch." *Id.* He says he remained on the finger food diet for seven days, but was taken off of this diet when he left suicide watch and was transferred to the High Security Housing Unit ("High SHU"). Thompson alleges that three or four days later, he asked Bala to get his "'chopped diet' started again, then all of a sudden [he] got a Finger Food diet after that." *Id.* at PageID #151. He alleges Bala did this in retaliation for filing lawsuits and grievances. Thompson commenced this action on July 3, 2017, eleven days after he states that he was transferred from suicide watch, and approximately one week after he began receiving the finger food diet again.

A.  42 U.S.C. § 1997e(a)

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). Requiring exhaustion allows prison officials "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010); *McKinney v.*

7

*Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862. Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

*Ross* outlined three limited "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. Failure to exhaust may be excused when: (1) the "administrative procedure . . . operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative

scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). Beyond these three circumstances, § 1997e(a) "foreclos[es] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Id.* at 1856-57.

Failure to exhaust is an affirmative defense. *Bock*, 549 U.S. at 216. The defendant must first prove that there was an available administrative remedy that was unexhausted by the inmate. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)). If the defendant carries his burden, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172).

**B.     DPS Administrative Remedies:  PPM Policy No. COR.12.03**

The DPS grievance system is contained in its Corrections Administration Policy and Procedures Manual ("PPM"), Policy No. COR.12.03 ("Inmate

9

Grievance Program," eff. July 1, 2015). Def.'s CSF, Ex. A, ECF No. 51-2. Policy No. COR.12.03.8 sets forth a three-step grievance procedure that applies to all inmates regarding incidents that arose while an inmate was incarcerated at a facility in Hawaii. *See id.*, COR.12.03.4.1.

Generally, a prisoner must file an initial grievance within fourteen days of the incident grieved, subject to certain exceptions. *See* COR.12.03.8.1-2. If the inmate is unsatisfied with the response he receives, or fails to receive a timely response, he may appeal to the Warden/Branch/Core Program Administrator, and if still unsatisfied, to the Division Administrator. *Id.*, COR.12.03.8.10. If a prisoner "reasonably believes the issue is sensitive," or fears for his safety if he pursued the normal grievance procedure, he may submit a grievance directly to the Division Administrator in a sealed envelope marked "Confidential." *Id.*, COR.12.03.8.3(b). Inmates may also file emergency grievances, defined as "[g]rievances of an exigent nature requiring an immediate resolution or a more expedited process." COR.12.03.8.3(c). The Inmate Grievance Program explicitly notifies prisoners that completion of all three steps is normally required before filing litigation in the federal courts. *See* COR.12.03.4.7.

## C. The Parties' Arguments

DPS Inmate Grievance Specialist Charles Laux states, "I have reviewed the Offendertrak records for grievances submitted by Thad Thompson throughout May, June and July of 2017. Based on my review, Mr. Thompson has not submitted any grievances related to his being ordered a finger food rather than a chopped food diet." Laux Dec., ECF No. 51-1, PageID #356. Bala therefore shows that there was an available grievance process and that Thompson failed to file a grievance pertaining to Bala serving him finger food rather than a chopped food diet in retaliation for filing grievances or lawsuits before Thompson brought this action.

The burden now shifts to Thompson to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Thompson does not dispute that he did not file any grievances regarding the finger food diet before he brought this action. Rather, Thompson argues that he did not understand that he was required to file a grievance in this situation because he only sought compensation for Bala's alleged retaliatory conduct and compensation is unavailable through the DPS grievance system. That is, he asserts that the DPS grievance procedure is misleading because COR.12.03.11 states, "monetary

compensation is not an option or appropriate resolution for the Inmate Grievance Program or the Administrative Remedy Program." He claims that "his only reasonable resolution was monetary compensation." Opp'n, ECF No. 55, PageID #390. Thompson also complains that the "Inmate Guidelines," which he attaches to his Opposition, do not explain the grievance procedure. *See* ECF 56-2 ("Inmate Guidelines," eff. Feb. 1999).

**D. Analysis**

First, "[e]ven when the prisoner seeks relief not available in grievance proceedings, *notably money damages*, exhaustion is a prerequisite to suit." *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth*, 532 U.S. at 741. That is because although the PLRA exhaustion requirement was not enacted to provide damages to a prisoner, it is designed to promote efficiency and preserve court resources by: "(1) 'giv[ing] prisoners an effective incentive to make full use of the prison grievance process'; (2) reducing prisoner suits as some prisoners are 'persuaded by the proceedings not to file an action in federal court'; and (3) improving the quality of any remaining prisoner suits 'because proper exhaustion often results in the creation of an administrative record that is helpful to the court.'" *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006).

Second, when Thompson commenced this action, he alleged that he was *still* being given finger food, and he clearly wanted his diet changed to a chopped food diet. *See* Compl., ECF No. 1, PageID #7 ("Plaintiff also has ridiculously been forced on a 'Finger Food' diet for 11+ days and counting,"). He says that he "asked quite a few Nurses to correct this [allegedly unsanitary diet] and even sent out written requests." *Id.* Filing a grievance could have provided Thompson the diet he sought, resolved a source of dispute between him and prison staff, and mitigated any damages to which he may have been entitled when the event was allegedly still happening.

Moreover, Thompson explicitly sought declarative and injunctive relief when he commenced this action. In the original Complaint, Thompson requested the court to "order the defendants injunctive relief to transfer Plaintiff to the Federal Detention Center in order to maintain his safety." Compl., ECF No. 1, PageID #9-10. Thompson also sought written apologies and public acknowledgment from Defendants that they had violated his rights, and he requested the court to grant all other "just and equitable relief that [it] deems necessary[,]" presumably including an order directing the prison to change his diet. *Id.*

Third, although Thompson refers to the 1999 Inmate Guidelines, which do not address grievances, he was clearly familiar with the DPS Inmate Grievance System and knew that he was required to exhaust his claims before he filed this suit. In his original Complaint, Thompson stated, "Plaintiff has filed the appropriate Administrative Remedies (Grievance #397143 for retaliation & Grievance #397144 for Due Process)," but then conceded that because he was seeking an injunction, "Plaintiff has not yet been able to totally exhaust." *Id.*, PageID #2. Thompson also states that prison staff and officials told him to file a grievance regarding his complaints several times. *See id.*, PageID #5 (stating a guard told him, "Maybe you should write a grievance," and "Yeah, well go a head and file a grievance!"); FAC, ECF No. 10 (stating Bala told him on June 3, 2017, "Maybe you should file a grievance."). Thompson also fails to explain how he knew that COR.12.03.11 prohibited monetary compensation for successful grievance claims, but was unaware that COR.12.03.4.7 explicitly notified prisoners that exhaustion was normally required before bringing suit in federal court.

Finally, the court notes that, while an inmate may add new claims to an amended complaint, even if they arose "prior to the filing of the initial complaint . . . as long as they are administratively exhausted prior to the amendment," Thompson's claim regarding the alleged retaliatory finger food diet was not a new

claim only added in his amended pleadings. *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (citing *Rhodes*, 621 F.3d at 1007). Thompson alleged this claim in the original Complaint, albeit against Jane Doe High Kitchen Supervisor. His claims against Bala in the FAC and SAC were not new, but simply amended and clarified who he alleged was liable for the perceived wrong. *Cf.*, *Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir. 2016) (finding that, despite the plaintiff's failure to name two physicians in his grievance, prison officials were put on notice of the nature of the wrong alleged in the suit sufficient to satisfy the exhaustion requirement). And Thompson concedes that he did not grieve this claim.

Thompson failed to exhaust available administrative remedies pursuant to COR No. 12.03 before initiating this action. He also fails to show that prison officials prevented him from pursuing a grievance because DPS's "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1860. The DPS grievance procedure is not only clear that, although compensation is not available, exhaustion is required before bringing suit in federal court, but Thompson was, by his own admission, pursuing a grievance regarding retaliation when he brought this suit.[3]

---

[3] There is no indication in the record what the outcome of this grievance was.

The mandatory language of the PLRA prevents a court from excusing a failure to exhaust in any case where the availability of administrative remedies is not in issue. *Ross* 136 S. Ct. at 1857. Thompson has not carried his burden of showing that administrative remedies were unavailable to him before he commenced this action.

## IV.  CONCLUSION

Defendant Michael Bala's Motion for Summary Judgment is GRANTED, and this action is dismissed without prejudice. The Clerk is directed to close the file and enter judgment. Any pending motions are denied.

IT IS SO ORDERED.

DATED: August 22, 2018 at Honolulu, Hawaii.



Derrick K. Watson
United States District Judge

---

*Thad Thompson v. Katherine Torres, et al.*; Civil No. 17-00319 DKW-RLP;
**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**